UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTHONY E. NTAMERE,<br><br>Plaintiff,<br><br>v.<br><br>AMERIHEALTH ADMINISTRATORS, INC.; JANE DOE, AKA AHA-000252, in her individual and official capacity; MICHELE SCHUMACHER, in her individual and official capacity; MINNESOTA DEPARTMENT OF HUMAN RIGHTS; CHARLOTTE CZARNECKI, in her individual and official capacity; INDEPENDENCE BLUE CROSS OF PA; JOHN CLAYTON, in his individual and official capacity; JEFFREY KEARNS, in his individual and official capacity; TASHIMA WALLER, in her individual and official capacity; and EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Defendants. | Case No. 22-CV-2682 (KMM/JFD)<br><br>REPORT AND RECOMMENDATION |

This matter is before the Court on Plaintiff Anthony E. Ntamere's *in forma pauperis* ("IFP") application filed pursuant to 28 U.S.C. § 1915(e)(2)(B). Noting deficiencies with Mr. Ntamere's original IFP application, this Court previously ordered Mr. Ntamere to submit a signed IFP application affirming that the financial information in the application is true and correct. (Dkt. No. 5.) Having received the requested information, Mr. Ntamere's IFP application is now before the Court for review under 28 U.S.C. § 1915(e)(2).

1

Upon that review and for the reasons outlined below, this Court finds that although Mr. Ntamere financially qualifies for IFP status, his Amended Complaint fails to state a plausible claim against the Minnesota Department of Human Rights ("MDHR"), the United States Equal Employment Opportunity Commission ("EEOC"), and Charlotte Czarnecki, EEOC Investigator. Accordingly, this Court recommends that those claims be dismissed as a matter of law. The Court does not recommend dismissal at this time of claims against the remaining Defendants: Independence Blue Cross of PA ("IBC"); AmeriHealth Administrators, Inc. ("AHA"); Jane Doe; Michelle Schumacher; John Clayton; Jeffrey Kearns; and Tashima Waller.[1] The Court has granted the IFP application in a separate order.

## BACKGROUND

Mr. Ntamere's Amended Complaint stems from his termination from employment at AHA, a subsidiary of IBC. (Am. Compl., Dkt. No. 4.)[2] In sum, according to Mr. Ntamere, when he was at a three-day AHA-sponsored training in July 2019, one of the trainers used a racist slur, which he purportedly recorded. (*Id.* at 9.) After this training, Mr. Ntamere filed a complaint with IBC human resources about what he experienced at the training, but Michelle Schumacher, the head of IBC human resources, ultimately closed

---

[1] This Court is not prepared to say that Plaintiff has stated a claim on which relief may be granted, only that the Amended Complaint presents a sufficiently plausible claim for relief that it will survive review under § 1915(e)(2)(B).

[2] Plaintiff's Amended Complaint supersedes his original complaint, rendering the original complaint "without legal effect." *Schlafly v. Eagle Forum*, 970 F.3d 924, 933 (8th Cir. 2020) (quoting *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019)). Accordingly, this Court views his Amended Complaint without any consideration to the original complaint.

the complaint and placed a probation notice in Mr. Ntamere's employee file for recording the training in violation of company policies even though, according to Mr. Ntamere, other employees "openly record" orientation sessions. (*Id.*)

After IBC closed the internal complaint, Mr. Ntamere filed a complaint with the EEOC. Mr. Ntamere alleges that EEOC investigator Charlotte Czarnecki erroneously directed him to file a cross-complaint with the Pennsylvania Human Relations Commission even though she knew or should have known that Pennsylvania was the wrong jurisdiction, and that by filing the complaint in Pennsylvania, he would be precluded from filing a complaint with the agency in the correct jurisdiction: the MDHR. The EEOC closed its file, determining that it could not conclude based on the information it had obtained that federal law had been violated. (Dkt. No. 4-2 at 9.) Although Mr. Ntamere attempted to then file a complaint with the MDHR about the use of a racial slur at the company workshop, because he filed the complaint with the Pennsylvania Human Relations Commission at Ms. Czarnecki's direction, he was told he would need to contact that agency for assistance. (Dkt. No. 4 at 14.)

According to Mr. Ntamere, in June 2020, the CEO of IBC sent out an email acknowledging racism within the company and the company's commitment to addressing it. Given his personal experiences with IBC, however, Mr. Ntamere claims that he found this email insincere, and he expressed these opinions on the company's intranet, or IWAY. In response, Schumacher allegedly placed a second probation notice in his employee file for failing to comply with the directive in his 2019 probation notice and for violating company policy. (Dkt. No. 4 at 17.) Mr. Ntamere reacted to the second probation notice by

3

making additional comments critical of IBC to other IBC employees on IBC forums. (*Id.*) Mr. Ntamere was subsequently terminated from employment on June 24, 2020.

Almost exactly one year later, Mr. Ntamere filed a complaint with MDHR claiming his termination from IBC was the result of race-based discrimination. (Dkt. No. 4-1.) The MDHR investigated and concluded that there was no probable cause to believe that discrimination occurred. *Id.* Mr. Ntamere requested reconsideration but, upon review, the MDHR affirmed its earlier finding. In doing so, however, the MDHR also concluded that Mr. Ntamere's claims that he had been placed on probation in August 2019 for recording the meeting in which he claims to have been subjected to a racial slur and in being instructed to direct future complaints to specific individuals may have constituted violations of the Minnesota Human Rights Act, but those claims were not properly before the MDHR because Mr. Ntamere had failed to timely assert them. (Dkt. No. 4-4 at 5.)

In this matter, Mr. Ntamere makes the following claims: (1) that Defendants MDHR, AHA, and Czarnecki deprived him of due process by cross-filing his 2019 EEOC complaint with the Pennsylvania Human Relations Commission instead of the MDHR in violation of 42 U.S.C. § 1983; (2) that Defendants IBC, AHA, Kearns, Clayton, and Waller discriminated against him based on race in violation of 42 U.S.C. § 1981; (3) that Defendants IBC and AHA retaliated against him by terminating his employment for engaging in a protected activity in violation of 42 U.S.C. § 1981; (4) that Defendants IBC and AHA engaged in unlawful retaliatory practices against him in violation of the Minnesota Human Rights Act ("MHRA"), specifically Minn. Stat. § 363A.15; (5) that Defendants IBC, AHA, Kearns, Clayton, and Waller discriminated against him based on

race in violation of Minn. Stat. § 363A.08, subd. 2, of the MHRA; (6) that Defendants IBC, AHA, Clayton, and Schumacher violated the Minnesota Whistleblower Act, specifically Minn. Stat. § 181.932; and (7) that Defendants Schumacher, Clayton, and Jane Doe defamed him. (Dkt. No. 1 at 18–24). This Report and Recommendation concerns Mr. Ntamere's claim against the MDHR, the EEOC, and Charlotte Czarnecki.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), an IFP application will be denied, and an action will be dismissed, when an IFP applicant has filed a complaint that fails to state a claim on which relief may be granted. See *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). In reviewing whether a complaint (or portion thereof) states a claim for which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Varga v. U.S. Nat'l Bank Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. Pro se complaints are to be construed liberally, but they must still allege enough facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

## ANALYSIS

Mr. Ntamere asserts claims against the MDHR, the EEOC, and Ms. Czarnecki under 42 U.S.C. § 1983 for violating his due process rights by failing to cross-file the 2019 EEOC complaint in the correct jurisdiction. To state a claim under 42 U.S.C. § 1983, however, "a

5

plaintiff must allege a violation of a constitutional right committed by a person acting under color of *state law*." *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006). By its terms, 42 U.S.C. § 1983 does not apply to the federal government or its employees acting under *federal* law. Accordingly, claims against the EEOC, a federal agency, and Ms. Czarnecki, a federal official, should be dismissed as a matter of law.[3]

This leaves Mr. Ntamere's claim against the MDHR. Assuming, without deciding, that Mr. Ntamere has articulated a violation of his constitutional due process rights, the MDHR, as an agency of the state of Minnesota, is not a "person" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) ("[S]tate and governmental entities . . . are not persons subject to liability for the purposes of 42 U.S.C. § 1983 action."). Further, "[s]overeign immunity deprives federal courts of jurisdiction over lawsuits brought by private citizens against states unless the state has waived its immunity or Congress has abrogated the state's immunity under a valid exercise of Congressional power." *Smith v. Beebe*, 123 F. App'x 261, 262 (8th Cir. 2005) (per curiam). Congress did not abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983. *Will*, 491 U.S. at 66-67. The State of Minnesota, moreover, has not consented to be sued

---

[3] A "*Bivens*" action may be brought against federal officials in their individual capacity for their constitutional torts. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395-97 (1971). Even so, *Bivens* does not extend to federal agencies such as the EEOC. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend *Bivens* to federal agencies). Further, the Supreme Court recently reiterated in *Egbert v. Boule*, 142 S. Ct. 1973 (2022), that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 1803. Accordingly, having found no established *Bivens* causes of action against an EEOC official who purportedly directed a claimant to cross-file an employment discrimination claim in the wrong district, the Court declines to establish one here.

in federal court. *See, e.g.*, *Daniels v. Jesson*, Case No. 13-CV-736 (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 24, 2014) (citing *Mashak v. Minnesota*, Case No. 11-CV-473 (JRT/JSM), 2012 WL 928225, at *10 (D. Minn. Jan. 25, 2012)), *R. & R. adopted*, 2012 WL 928251 (Mar. 19, 2012) ("Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. Minnesota has not waived its immunity from § 1983 claims, nor has the State of Minnesota consented to suit.").[4] Accordingly, Mr. Ntamere's claims against the MDHR fail as a matter of law and should be dismissed.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Anthony E. Ntamere's claims against the Minnesota Department of Human Rights, the Equal Employment Opportunity Commission, and Charlotte Czarnecki be **DISMISSED**.

Dated: February 9, 2023                       *s/ John F. Docherty*
                                              JOHN F. DOCHERTY
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days

---

[4] Although "state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment," *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007), Mr. Ntamere does not identify a Minnesota state official as a defendant in his lawsuit.

after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).