UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Anthony E. Ntamere,

                Plaintiff,

v.

Amerihealth Administrators Inc., et. al,

                Defendants.

Case No. 22-cv-02682 (KMM/JFD)

**ORDER**

---

Plaintiff Anthony Ntamere brings this action pro se against several parties, alleging racial discrimination, retaliation, defamation, and violation of due process under numerous federal and state laws. [Am. Compl., ECF No. 4.] In Count One of Mr. Ntamere's Amended Complaint, he alleges deprivation of his civil rights by Defendants Minnesota Department of Human Rights ("MDHR"), Amerihealth Adminstrators Inc ("AHA"), and Charlotte Czarnecki in violation of 42 U.S.C. § 1983. Mr. Ntamere also brings a claim against Defendants Independence Blue Cross, LLC ("IBC"), AHA, Jeffrey Kearns, John Clayton, and Tashima Waller for discriminatory treatment due to race in violation of 42 U.S.C. § 1981 and a claim for retaliation under the same statute by Defendants IBC and AHA in Counts Two and Three, respectively.

Furthermore, Mr. Ntamere brings a claim against IBC and AHA for reprisal in Violation of Minn. Stat. § 363A.15; a race discrimination claim against IBC, AHA, Kearns, Clayton, and Waller in Violation of Minn. Stat. § 363A.08, subd. 2; a claim

against IBC, AHA, Clayton, and Schumacher in violation of the Minnesota Whistleblower Act; and a defamation claim against Schumacher and Clayton.

Before the Court are a motion to dismiss filed by several defendants[1] [Mot. to Dismiss, ECF No. 14.] and Mr. Ntamere's motion to file a surreply to Defendants' motion. [Mot. to File Surreply, ECF No. 47.] Defendants' motion is **GRANTED**, and Mr. Ntamere's motion is **DENIED**.[2]

## I.      Background

When considering a motion to dismiss, a court assumes all factual allegations in the complaint are true and construes all reasonable inferences in favor of the nonmoving party. *Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020). The Court may consider the Complaint and documents attached to it, as well as materials contemplated by the Complaint. *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013); *see also Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.") (citations omitted). In this case, Mr. Ntamere submitted numerous documents

---

[1] The defendants bringing this motion to dismiss are AmeriHealth Administrators, Inc. ("AHA") and Independence Blue Cross, LLC ("IBC"), along with Michele Schumacher, John Clayton, Jeffrey Kearns, and Tashima Waller (collectively the "AHA Individuals").

[2] Mr. Ntamere essentially submitted a surreply when providing his reasoning for why the Court should allow him a surreply, and the Court will consider that document in its analysis. The Court does not need anything further from Mr. Ntamere, and to the extent that he seeks leave to submit additional arguments, that request is denied.

and an audio recording along with the Complaint, so the Court has considered all of those materials in its review of the Motion to Dismiss.

The events at issue in this lawsuit took place while Mr. Ntamere was an employee at AmeriHealth Administrators, Inc. ("AHA"), a subsidiary of Independence Blue Cross, LLC ("IBC").  [Am. Compl. ¶ 5.]   In July 2019, Mr. Ntamere attended a training workshop at AHA's Bloomington, MN location.  [*Id.* ¶ 54.]  The presentation focused on diversity and inclusion awareness, respect, and unconscious bias.  [*Id.*]  Three IBC employees, Tashima Waller, Jeffrey Kearns, and John Clayton, led the training.  [*Id.* ¶ 55.] According to Mr. Ntamere, while at the training Mr. Kearns used a racist slur, which Mr. Ntamere recorded.[3]  [*Id.* ¶ 57.]  Mr. Ntamere reported the incident to IBC's General Counsel.  [*Id.* ¶ 68.]  In making his complaint, he disclosed that he recorded the training. [*Id.* ¶ 69.]   AHA investigated the incident but could not corroborate Mr. Ntamere's assertion that Mr. Kearns used a racial slur during the presentation; no other witnesses reported hearing the slur, and they concluded that Mr. Ntamere's recording was inconclusive.  [MDHR Reconsideration ¶ 10, ECF No. 4-4.]

On August 6, 2019, AHA placed a probation notice in Mr. Ntamere's employee file for recording the training in violation of company policies.  [Am. Compl. ¶ 69, 70; EEOC Charge at 1, ECF No. 4-1.]  Around the same time, AHA informed Mr. Ntamere that any future internal complaints should be directed to Carol Dunleavy, a human

---

[3] The Complaint contained a link to the audio recording, and the Court listened to it.  The Court does not hear any use of a racial slur on the recording.

resources employee, or initiated via AHA's toll-free compliance hotline. [MDHR Reconsideration ¶ 11.]

After being placed on probation, Mr. Ntamere sought to file a charge with the EEOC and ran into various difficulties. [Am. Compl. ¶ 70–84.] The EEOC ultimately closed its file, determining that it could not conclude based on the information it obtained that federal law had been violated. [EEOC Dismissal at 9, ECF No. 4-2.] Mr. Ntamere then attempted to file a complaint with the MDHR about the alleged use of the racial slur; however, because the initial complaint was filed with the Pennsylvania Human Rights Commission, he was told he would need to contact the PHRC for assistance. [Am. Compl. ¶¶ 83–84.] The PHRC declined to accept his charge because he was not a Pennsylvania resident. [Am. Compl. ¶ 82.]

In June 2020, IBC's then-CEO sent out an email within the company condemning racism. [*Id.* ¶¶ 87–91.] Given his experience at the earlier workshop, Mr. Ntamere found the email insincere, and he expressed this opinion on the company's intranet platform, the iWay.[4] [*Id.*] In response, Michele Schumacher, Director of Human Resources at AHA, placed a second probation notice in Mr. Ntamere's employee file for failing to comply

---

[4] The iWay is an intranet platform used by IBC and AHA employees to access training modules, company directories, IT support information, news updates, and limited social media engagement. [Defendants' Mem. in Supp. 4, ECF No. 16.] Mr. Ntamere's iWay post stated, in part, "[Company] does not stand against institutional racism or how else would a white male . . . HR manager feel confident enough to utter the N-word in front of my coworkers . . . during the training." [MDHR Order ¶ 12.]

with the directive in his 2019 probation notice and for violating company policy.[5]  [*Id.* ¶ 95.]

Mr. Ntamere then made additional comments critical of IBC on iWay.[6]  [*Id.* ¶ 96; MDHR Order ¶ 14.]  AHA terminated Mr. Ntamere's employment on June 24, 2020.  [*Id.* ¶ 97.]

---

[5] Ms. Schumacher informed Mr. Ntamere that:

> By posting your comment on June 8, 2020, you violated the directive in your 2019 probation to make any complaints solely to Carol Dunleavy or the compliance hotline.  Additionally, the post violated the company's Harassment Free Workplace Policy and Computing Devices Acceptable Use Policy because you used the company's intranet site to transmit defamatory and harassing content and because you falsely accused another individual of harassment in a malicious manner.

[Am. Compl. ¶ 95.]

[6] This post said:

> [Company] wants me to pretend that I was not called the N-word by [07/31/2019 workshop presenter] despite the fact that I provided a recording to HR . . . during the anti-bias training workshop held last year in MN.  Listening to [Company] talk about racism is like listening to Thomas Jeffrey [sic] advocate the abolition of slavery.  A sociopath will pee on your leg and say it is raining.  I'm on the verge of being fired for my refusal to let [07/31/2019 workshop presenter's] conduct go unpunished.  I have now been placed on probation again by [HR representatives] with threats of being fired if I continue to complain about the July 31 [, 2019] incident.  Had it not been for the recording of George Floyd being murdered we would have been left with a police report that states his death was caused by a medical distress.  Before your HR dept makes good on its threat to fire me for refusing to let it be, for my refusal to accept [Company's] "See no evil, Hear no Evil, Speak no Evil" culture, let them realize that I still have the 2-minute clip recording plus the entire recording. [Company] is not against anti-black racism, only pretending to be so for the benefit of your IMAGE.

MDHR Order, ¶ 14.

A year later, Mr. Ntamere filed a charge of discrimination with the MDHR, naming AHA as the respondent.  [MDHR Order, ECF No. 4-2.]  The MDHR investigated the matter and determined that there was no probable cause to believe that discrimination occurred.  [*Id.*]  Mr. Ntamere requested reconsideration, during which the MDHR affirmed its earlier ruling.  [MDHR Reconsideration at 1, ECF 4-4.]  In doing so, the MDHR explained that Mr. Ntamere's allegations of discriminatory and retaliatory treatment prior to his termination, along with his MHRA reprisal claim were untimely.  [*Id.* ¶¶ 20, 29.]  The only timely claim before the MDHR was Mr. Ntamere's retaliatory discharge claim.  [*Id.* ¶ 21.]

The MDHR also concluded that Mr. Ntamere's June 8 and June 22 iWay postings were "patently unreasonable and did not constitute protected activity" because "neither posting was a serious attempt to report discriminatory treatment."  [*Id.* ¶ 24.]  The MDHR explained its finding that Mr. Ntamere's iWay posts "were objectively inflammatory and likely defamatory," and were "clearly intended to shock his coworkers, target the HR trainer, and embarrass his employer.  [*Id.* ¶ 25.]  Finally, the MDHR stated that documentation showed that AHA took Mr. Ntamere's complaint seriously and thoroughly investigated it in August 2019.  [*Id.* ¶ 24.]  Because the iWay posts were not a protected activity, the MDHR found that Mr. Ntamere was unable to "state a threshold retaliatory discharge claim."  [*Id.* ¶ 26.]

Mr. Ntamere now brings this case against a variety of defendants, including AHA, IBC, and several employees at AHA.  In its motion, the Defendants request the Court dismiss all allegations against them.  The Court grants the motion.

## II.    Analysis

The Defendants raise several arguments in support of dismissal.  First, they argue that the Court should dismiss the AHA individuals for lack of personal jurisdiction. [Defs. Mem. in Supp. 8.]   Defendants also argue that the Court should dismiss Counts 1, 2, and 3 of Mr. Ntamere's Amended Complaint for failure to state a claim.  As explained below, the Court agrees in most respects.

### A.  Personal Jurisdiction

Defendants first move the Court to dismiss the AHA Individuals pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction over them.  A plaintiff "must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state" in order to survive a motion to dismiss for lack of personal jurisdiction." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

A Minnesota federal court can only assume jurisdiction over a nonresident defendant if doing so is permitted by Minnesota's long-arm statute and by the Due Process Clause.  *WinRed, Inc. v. Ellison*, 581 F. Supp. 3d 1152, 1160 (D. Minn. 2022). The Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," so the Court need only consider due process requirements.  *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007).

Due process requires defendants to have sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Sacks v. Univ. of Minn.*, 600 F. Supp. 3d 915, 935

(D. Minn. 2022) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  Having sufficient minimum contacts means the defendant's actions must create a substantial connection with the forum state that would provide the defendant with fair notice "that they may be subject to jurisdiction there."  *Sacks*, 600 F. Supp. 3d at 935 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)) (cleaned up).  This requirement is met if a defendant has purposefully directed their activities at residents of the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities.  *Id*.

There are two types of personal jurisdiction: general and specific jurisdiction. *Higgins v. Save Our Heros*, Civil No. 18-42 (DSD/BRT), 2018 WL 2208319, at *1 (D. Minn. May 14, 2018).   When a defendant's "affiliations with the state are so continuous and systematic as to render it essentially at home in the forum State," general jurisdiction is established, regardless of the nature of the claim.   *Id.* at *2 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotation marks omitted)). However, claims relating to or arising from a defendant's activities within the forum state may result in specific jurisdiction.  *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745–46 (8th Cir. 2011); *see also Lakin v. Prudential Securities, Inc.,* 348 F.3d 704, 707 (8th Cir.2003) (determining that the cause of action in that case was "entirely unrelated to [defendant's] activities in [the forum]").  The defendant must also "engage in activities in the form that reveal an intent to invoke or benefit from the protection of its laws." *Pangaea, Inc.*, 647 F.3d at 746 (quotation omitted); *Laver v. Peal*, 516 F. Supp. 3d 931, 934 (D. Minn. 2021) (explaining that when the cause of action results from or is

connected to a defendant's actions within the forum state and the defendant "purposefully avails itself of the privilege of conducting activities within the forum state," specific personal jurisdiction exists).

The Eighth Circuit considers five factors when determining whether personal jurisdiction exists: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree; (4) the interest of the forum state; and (5) the convenience of the parties." *Higgins*, 2018 WL 2208319, at *2 (quoting *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995)). Because Mr. Ntamere concedes that the Court lacks general jurisdiction over the AHA individuals, its focus is on whether specific jurisdiction exists. The burden of proof is with the party attempting to establish jurisdiction. *See Westley v. Mann*, 896 F. Supp. 2d 775, 786 (D. Minn. 2012). When the cause of action results from or is connected to a defendant's actions within the forum state and the defendant "purposefully avails itself of the privilege of conducting activities within the forum state," specific personal jurisdiction exists. *Laver v. Peal*, 516 F. Supp. 3d 931, 934 (D. Minn. 2021). The defendant's interactions "with the forum state must result from more than random, fortuitous, or attenuated happenings." *Laver*, 516 F. Supp. 3d at 935. To determine whether personal jurisdiction exists, "[i]t is a defendant's contacts with the forum state that are of interest . . . not its contacts with a resident." *Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 655 (8th Cir. 1982) (quoting *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977)).

Defendants assert that Mr. Ntamere does not allege facts that satisfy his burden of showing that the Court has specific jurisdiction over the AHA Individuals.  Mr. Ntamere counters that this litigation only arose due to those individuals' conduct within Minnesota.

The Court finds that Mr. Ntamere has not pleaded sufficient facts to allege that this Court has specific jurisdiction over Ms. Waller, Mr. Clayton, or Ms. Schumacher. According to the Complaint, Ms. Waller and Mr. Clayton were in Minnesota for the training, and no other facts are alleged regarding any ties to Minnesota or conduct undertaken in Minnesota, let alone purposeful availment.   [Am. Compl. ¶ 54.] Mr. Ntamere does not allege that they made any racist statements to him, unlike his claim about Kearns.   He also has not alleged that these individuals routinely came to or conducted business in Minnesota, nor has he alleged that they have had any additional contacts with Minnesota aside from the training.   The fact that some of the AHA Individuals attended a training session is a single, random event within the forum state. Their contact with Minnesota is nothing more than "random, fortuitous, or attenuated happenings" and is insufficient to exercise personal jurisdiction over them.  *Laver*, 516 F. Supp. 3d at 935.  Moreover, Mr. Ntamere has not alleged anything pertaining to Ms. Schumacher being in Minnesota, and she has not visited since October 2019. [Schumacher Decl. ¶ 6.]  Because Mr. Ntamere has not carried his burden to establish specific personal jurisdiction, Ms. Waller, Mr. Clayton, and Ms. Schumacher are dismissed from the case.

The Court reaches a different conclusion regarding Mr. Kearns, although the Court dismisses the claims against him on other grounds. Though the allegations regarding Mr. Kearns are somewhat limited, the Court finds that Mr. Ntamere has alleged enough to show that Mr. Kearns is subject to this Court's specific jurisdiction given that the claim arguably "arises out of" Mr. Kearns's contact with the forum.  With respect to the nature and quality of the contacts by Mr. Kearns with the forum state (Minnesota), the only relevant contact Mr. Kearns had with the forum state was the incident that occurred at the training where Mr. Ntamere alleges Mr. Kearns directed a racist comment toward him. However, contrary to Defendants' suggestions, a single contact with the forum state can give rise to specific jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 490 n. 18 (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").  The Court finds that the assertion that Mr. Kearns allegedly made a racist or derogatory comment toward Mr. Ntamere during a work training in Minnesota is a substantial relevant connection.  Mr. Kearns was at the training for work, and Mr. Ntamere was required to attend the training due to his employment with AHA. This is a substantial connection somewhat closely related to the complained-of conduct that is significant enough to warrant the Court's exercise of specific jurisdiction. Furthermore, the alleged injury was at least indirectly related to Mr. Kearns's contact with the forum state and was directed at Minnesota residents.

With respect to the connection between the cause of action and the contacts, the Court can reasonably say that this cause of action in some part arises from or is related to Mr. Kearns's actions with Minnesota.   The record shows that Mr. Kearns gave a

presentation at the training that Mr. Ntamere attended. The record also shows that Mr. Ntamere believed he heard Mr. Kearns make a derogatory comment toward him. In addition, the record demonstrates that Mr. Ntamere complained about the alleged conduct, there was an inquiry, he posted about the occurrence, filed charges, and finally filed a lawsuit as a result of the incident and its aftermath. The fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from injuries that arise out of or relate to those activities. *Burger King Corp.*, 471 U.S. at 472–73. That requirement is satisfied by the allegations here. Mr. Kearns could reasonably anticipate being haled into court in Minnesota, where he attended a work training and allegedly made a racist comment toward Mr. Ntamere while giving a presentation.

Finally, Minnesota has an interest in providing a forum to its residents, and it would not be neither overly inconvenient nor extremely burdensome to require Mr. Kearns and his witnesses to travel from his residence to Minnesota to resolve Mr. Ntamere's allegations. Therefore, the maintenance of an action against Mr. Kearns would not offend traditional notions of fair play and substantial justice. For these reasons, the Court finds that it can exercise specific personal jurisdiction over Mr. Kearns.

### B. Failure to State a Claim

Defendants move to dismiss Counts 1, 2, and 3 of Mr. Ntamere's Amended Complaint, arguing that they fail to state a claim under Federal Rule of Civil Procedure

12(b)(6).[7] A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). When the plaintiff alleges factual information that enables the court to reasonably infer that the defendant is liable for the claimed misbehavior, the claim has facial plausibility because "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept "wholly conclusory allegations, or unwarranted factual inferences" as true in order to give weight to well-pleaded factual claims, or "blindly accept the legal conclusions drawn by the pleader from the facts." *Helleloid v. Indep. Sch. Dist. No. 361*, 149 F. Supp. 2d 863, 867 (D. Minn. 2001) (quoting *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Markewich ex rel. Medtronic, Inc. v. Collins*, 622 F. Supp. 2d 802, 806 (D. Minn. 2009) (citing *Twombly*, 550 U.S. at 570). If a plaintiff has not pleaded facts entitling him to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558–59 (citations omitted).

As noted, a court may consider exhibits attached to the complaint, documents that are necessarily embraced by the pleadings, and public records. *Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008). These "include documents

---

[7] Defendants also ask the Court find that Mr. Ntamere waived some of his claims because he did not provide adequate argument on them. The Court acknowledges that Mr. Ntamere's briefing was inadequate, and also notes that he sought leave to provide additional analysis. But because the claims are dismissed on substantive grounds, the Court need not decide the issue of waiver.

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotations omitted). In this case, the documents and audio recording Mr. Ntamere incorporated into his complaint were relevant to this Court's decision on the Motion to Dismiss.

### 1. Section 1983: Count 1

Defendants AHA seek to dismiss Mr. Ntamere's 42 U.S.C. § 1983 claim on the grounds that he has not alleged any misconduct on the part of AHA, and even if he had, the claim still fails since AHA is a state actor.

Under § 1983, only state actors are subject to liability. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). To hold a private party liable under Section 1983, the plaintiff must allege "that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor," which must be pleaded with "specificity and factual support." *Cassell v. Cnty. of Ramsey*, Civil No. 15-2598 (PJS/JJK), 2015 WL 9590802, at *9 (D. Minn. Dec. 11, 2015) (quotations and citations omitted), *report and recommendation adopted*, 2015 WL 9581806 (D. Minn. Dec. 30, 2015). There are no allegations in the Complaint that AHA was either acting as a state actor or working in concert with a state actor when it took the actions complained of in the Complaint. Moreover, Count One does not describe any specific actions taken by AHA but focuses entirely on MHRA and EEOC's handling of his Complaint. Although federal courts liberally construe pro se pleadings, merely alleging deprivation of a federal constitutional right, without more, is not enough to state

a claim. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (liberal construction of pro se pleadings required, but they cannot be merely conclusory). For these reasons, the Court dismisses Count 1 with prejudice.

### 2.  Section 1981: Counts 2 and 3

Mr. Ntamere raises two claims under 42 U.S.C. § 1981. He first alleges racial discrimination against IBC, AHA, Jeffrey Kearns, John Clayton, and Tashima Waller. He also alleges retaliation against IBC and AHA. Defendants argue that both counts fail because Mr. Ntamere has not pleaded a contractual interest and has not pleaded plausible facts that would support either claim. The Court finds that Mr. Ntamere did adequately plead a contractual interest, but he otherwise fails to allege a viable claim for either discrimination or retaliation under § 1981.

### Count 2 – Discrimination

Under § 1981, all persons have the same right to "make and enforce contracts . . . as is enjoyed by white citizens," which includes the right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–(b). However, § 1981 "does not provide a general cause of action for race discrimination." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009). Rather, it prohibits racial discrimination arising out of a contractual relationship. *Id.*; *see also* 42 U.S.C. § 1981. An individual "cannot state a claim under § 1981 unless he has or would have rights under the existing or proposed contract that he wishes to make and enforce." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). Plaintiffs under § 1981 "must identify injuries flowing from a racially motivated breach of their own contractual

relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. at 480. The defendants argue that Mr. Ntamere failed to allege the required contractual relationship. However, their application of the requirements for alleging a contract under § 1981 is too narrow.

The Eighth Circuit has held that "an at-will employee, employed without a written contract in an agreement terminable at will by either party, has a "contract" within the meaning of civil rights statute guaranteeing equal rights to make and enforce contracts." *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 890 n.3 (8th Cir. 2005) (quoting *Skinner v. Maritz, Inc.*, 253 F.3d 337, 339 (8th Cir.2001)); *see also Turner v. Arkansas Ins. Dept.*, 297 F.3d 751, 759 (8th Cir.2002) (concluding that it is "clearly established" that Section 1981 permits at-will employees to file a claim for employment discrimination). Consequently, Mr. Ntamere, who clearly alleges he was an employee of IBC and AHA, has adequately plead a contractual interest under § 1981.

Although Mr. Ntamere has pleaded a contractual interest, his § 1981 claims nevertheless fail. To succeed at this stage, Mr. Ntamere must plead facts plausibly showing unlawful discrimination, not mere speculation of discriminatory intent on the defendants' part, to create a prima facie case under § 1981. *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 962 (8th Cir. 2023) (affirming grant of motion to dismiss on the grounds that plaintiff failed to allege discriminatory intent). Specifically, a complaint must allege (1) membership in a protected class; (2) discriminatory intent by the defendant; (3) that the plaintiff was engaged in a protected activity; and (4) the defendant interfered with that activity. *Yang*, 79 F.4th at 962. The Supreme Court has held that to survive a motion to dismiss, a complaint raising a § 1981 claim must plausibly allege that

"but for race," the complained-of interference with the contract would not have occurred.

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

Mr. Ntamere has failed to plausibly plead the required discriminatory intent.

Certainly, in his Complaint, Mr. Ntamere discusses race.   Most critically, Mr. Ntamere asserts that he was in earshot of Mr. Kearns' alleged use of a racial slur. However, he has not plausibly alleged that any of the defendants interfered with his contractual activity or that he sustained injuries flowing from a racially motivated breach of a contractual relationship.   [Am. Compl. ¶ 57]; *see also Domino's*, 546 U.S. at 480. After the incident, Mr. Ntamere reported his experience, and the matter was investigated. [ECF 4-4 at 2, 4 n. 8.]   Mr. Ntamere has not alleged that Defendants interfered with his reporting.   When Mr. Ntamere was placed on probation, it was because he violated company policy regarding audio recordings.   He does not plausibly allege that his supervisors placed him on probation due to his race, but alleges that he was placed on probation for recording a coworker using what he believed was a racial slur.   That does not satisfy the requirement for alleging but-for causation.

Mr. Ntamere also claims discrimination arising out of his termination in 2020, but this claim fails for similar reasons.   Mr. Ntamere fails to plausibly allege or explain in any way that his termination was racially motivated.   The documents he submits with his complaint demonstrate that Mr. Ntamere was terminated for non-racially discriminatory reasons, specifically his repeated violations of his company policy and his misuse of the iWay postings.   And none of the documents even hint at a racially motivated basis for his discipline or termination.   Moreover, nowhere does Mr. Ntamere identify any similarly

situated person of a different race whom he asserts received more favorable treatment than he did. *Glover v. Am. Credit Acceptance*, 2023 WL 158198, at \*6 (dismissing § 1981 claims where the plaintiff failed to plead "any circumstantial facts that suggest Defendants intended to discriminate against him on the basis of race" including failing to allege any similarly situated persons of other races received more favorable treatment). Because Mr. Ntamere has not alleged plausible facts to sustain a prima facie § 1981 claim, he cannot meet the foundational element of the test.

When a plaintiff is unable to adequately allege direct discrimination in support of a § 1981 claim, the Eighth Circuit has held that the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), can be considered. *Gibson v. Graphic Packaging Int'l, Inc.*, No. 5:15-CV-00386 BSM, 2017 WL 3444701, at \*6 (E.D. Ark. Aug. 10, 2017). Under this framework, the plaintiff must first establish a prima facie case, after which the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action. *Harris v. Hays*, 452 F.3d 714, 717 (8th Cir. 2006). In order to establish a prima facie case for race discrimination, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014) (quoting *Gibson,* 670 F.3d at 853–54 (internal quotations omitted). Although a plaintiff need not allege every aspect of a prima facie case in the Complaint, the elements of the test can inform whether a plaintiff has

plausibly alleged a violation of § 1981. *Smith v. Arkansas Highway Police*, No. 4:13CV00301 JLH, 2013 WL 12320409, at *5 (E.D. Ark. Oct. 7, 2013).

Even with the flexibility afforded by the burden-shifting scheme, Mr. Ntamere fails to allege discrimination in violation of § 1981. Mr. Ntamere belongs to a protected class and was subjected to an adverse employment action as a result of his termination. But given his repeated violations of company policy and improper iWay postings, and documents in the records he submitted, he fails to plausibly allege that he met his employer's legitimate expectations. And as explained above, there are simply no facts alleged that give rise to an inference of discrimination. As a result, the Court dismisses Count 2.

The Court dismisses the § 1981 claims against Mr. Kearns, Mr. Clayton, and Ms. Waller for another reason as well. Section 1981 does not provide a cause of action against coworkers. *See Yang v. Robert Half Int'l, Inc.*, Case No. 19-cv-2669 (NEB/DTS), 2020 WL 5366771, at *4 (D. Minn. Sept. 8, 2020) (exploring relevant decisions and concluding that coworkers are not proper defendants under § 1981 unless they exercise supervisory authority). Mr. Ntamere has not alleged these individuals had supervisory authority over him, and as a result, his § 1981 claims against them are dismissed.

### Count 3 – Retaliation

Defendants similarly argue that the Court should dismiss Count 3, which alleges retaliation under § 1981 because Mr. Ntamere fails to plausibly plead a prima facie case. The Court again agrees.

As with his discrimination claim, the *McDonnell-Douglas* analytical framework can be applied to his retaliation claim.  Mr. Ntamere must allege: "(1) protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two."  *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 930 (8th Cir. 2021).  Once the plaintiff has met this preliminary showing, the defendant needs to demonstrate that the employment actions being contested were motivated by lawful, non-retaliatory factors. *Onyiah*, 5 F.4th at 930.  In order to establish a causal connection, the plaintiff is required to demonstrate that the unlawful retaliation would not have taken place in the absence of the alleged wrongful conduct or actions of his employer, or that the intention to retaliate was the but-for cause of his termination.  *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1032 (8th Cir. 2013).

In Count 3, Mr. Ntamere alleges retaliation under § 1981 for: (1) placing him on probation in 2019 for violating company policy by surreptitiously recording the training session without receiving permission; (2) advising him that the proper channel for complaints was to human resources or the compliance hotline and not, as a starting point, the General Counsel's office; (3) placing him on probation in 2020 after making his first inappropriate posting on iWay; and (4) terminating his employment after he ignored company directives and made a second iWay posting.  [Am. Compl. ¶ 118.]  But these allegations are not enough to support a claim for relief, nor to survive a motion to dismiss.  Mr. Ntamere fails to plausibly allege that the complained-of actions were done to retaliate for protected activity.  Indeed, not all complaints about the conduct of coworkers or the company constitute protected activity.  *See, e.g., Argyropoulos v. City of*

*Alton*, 539 F.3d 724, 733–34 (7th Cir. 2008) (noting that Title VII's retaliation provision "does not grant the aggrieved employee a license to engage in dubious self-help tactics or workplace espionage in order to gather evidence of discrimination."); *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1139–41 (11th Cir. 2020) (en banc) (observing that employee conduct in complaining about a workplace issue can "be deemed unreasonable thereby lose its protected status—if the opposition is expressed in a manner that unreasonably disputes other employees or the workplace in general.")

Here, even Mr. Ntamere's allegations themselves demonstrate that he was not disciplined and ultimately terminated for protected workplace activities, but for prohibited conduct like secretly recording his coworkers; using iWay to relitigate an earlier addressed issue; and again, posting such matters on iWay despite being specifically warned against doing so.   These actions are not protected, and he cannot plead the first element of his claim.   Moreover, the one protected step he took—filing a complaint to the company and the EEOC—took place well before his termination and itself resulted in no alleged retaliation.

In sum, Mr. Ntamere fails to plausibly allege that he was disciplined for protected activity, and his § 1981 retaliation claim must be dismissed.

### C. Supplemental Jurisdiction

Having dismissed Counts 1, 2, and 3, the Court dismisses Counts 4 through 7 because it lacks subject matter jurisdiction over these claims, which are all based on state

law.[8]  *See* Fed. R. Civ. P. 12(b)(1).  The Court does not have subject matter jurisdiction over the remaining state law claims because "[f]ederal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'" *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)).  And district courts generally decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction," and the "Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when . . . all federal claims are dismissed well before trial."  *Sacks*, 600 F. Supp. 3d at 944 (citing *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008)); *see also* 28 U.S.C. § 1367(c).  Because the Court has dismissed Mr. Ntamere's federal claims and this case is at a relatively early stage, it declines to exercise supplemental jurisdiction over the state claims.

---

[8] Mr. Ntamere has not alleged diversity jurisdiction.  Instead, his Complaint specifically alleges federal question jurisdiction.  [Am. Compl., ECF No. 4.]

### III.   Order

**For the foregoing reasons, IT IS HEREBY ORDERED that:**

1.   Defendants' Motion to Dismiss [ECF No. 14] is **GRANTED** as follows:

    a.   Plaintiff's claims against John Clayton, Tashima Waller, and Michele Schumacher, but not Jeffrey Kearns, are dismissed without prejudice for lack of personal jurisdiction.

    b.   Plaintiff's § 1983 claim against the AHA are dismissed with prejudice for failure to state a claim.

    c.   Plaintiff's § 1981 discrimination claim against IBC, AHA, Jeffrey Kearns, John Clayton, and Tashima Waller are dismissed with prejudice for failure to state a claim.

    d.   Plaintiff's § 1981 retaliation claim against IBC and AHA are dismissed with prejudice for failure to state a claim.

    e.   Plaintiff's state law claims are dismissed without prejudice as the Court lacks subject matter jurisdiction over the claims.

2.   Plaintiff's Motion to File a Surreply [ECF No. 47] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 14, 2023                    *s/Katherine Menendez* _____