UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTHONY E. NTAMERE, | Case No. 22-CV-2682 (KMM/JFD) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| AMERIHEALTH ADMINISTRATORS, INC.; JANE DOE, in her individual and official capacity; INDEPENDENCE BLUE CROSS OF PA; JEFFREY KEARNS, in his individual and official capacity; EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; KEITH ELLISON, Minnesota Attorney General; REBECCA LUCERO, MDHR Commissioner; and TOM BERNETTE, MDHR Lead Investigator, | |
| Defendants. | |

Plaintiff Anthony E. Ntamere's *in forma pauperis* (IFP) application is before the Court for preservice review of his Second Amended Complaint (Dkt. No. 61-1), pursuant to the Order (Dkt. No. 63) of the Honorable Katherine M. Menendez, United States District Judge, and 28 U.S.C. § 1915(e)(2)(B). The Court finds that Mr. Ntamere still qualifies financially for IFP status but also finds that the Second Amended Complaint fails to state a plausible claim upon which relief may be granted. Accordingly, the Court recommends that this matter be dismissed.

1

## PROCEDURAL BACKGROUND

Upon preservice review of Mr. Ntamere's First Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), this Court recommended that Defendants Minnesota Department of Human Rights (MDHR), the Equal Opportunity Employment Commission (EEOC), and Charlotte Czarnecki be dismissed from this action because Mr. Ntamere failed to state a plausible claim against them. (Dkt. No. 8). This Court granted Plaintiff's IFP application and also ordered that the First Amended Complaint be served on the remaining Defendants: AmeriHealth Administrators, Inc. (AHA); Jane Doe, a/k/a AHA-000252; Independence Blue Cross of PA (IBC); Michele Schumacher; John Clayton; Jeffrey Kearns; and Tashima Waller (collectively, the AHA Individuals). (Dkt. No. 7.) Mr. Ntamere filed objections to the Court's recommendation. (Dkt. No. 10). AHA, IBC, and the AHA Individuals filed a motion to dismiss the Amended Complaint.[1] (Dkt. No. 14).

Judge Menendez accepted this Court's recommendation over Mr. Ntamere's objections, dismissed Mr. Ntamere's claims against Ms. Czarnecki and the EEOC without prejudice, and allowed Mr. Ntamere to "add Attorney General Keith Ellison, MDHR commissioner Rebecca Lucero, and MDHR Lead Investigator to his Amended Complaint, remove MDHR as a defendant, and correct typos to his Amended Complaint." (Dkt. No. 58). Judge Menendez explicitly advised Mr. Ntamere that he "may not make other revisions." (*Id.*)

---

[1] Defendant Jane Doe has not been served with the summons and complaint.

In a separate Order, Judge Menendez granted the Motion to Dismiss brought by AHA, IBC, and the AHA Individuals. (Dkt. No. 59.) Specifically, Judge Menendez ordered that Mr. Ntamere's claims against John Clayton, Tashima Waller, and Michele Schumacher be dismissed for lack of personal jurisdiction; that Mr. Ntamere's claims against AHA under 42 U.S.C. § 1983 be dismissed with prejudice for failure to state a claim; that Mr. Ntamere's § 1981 claims against IBC, AHA, Jeffrey Kearns, John Clayton, and Tashima Waller be dismissed with prejudice for failure to state a claim; that Mr. Ntamere's § 1981 retaliation claims against IBC and AHA be dismissed with prejudice for failure to state a claim; and that Mr. Ntamere's state law claims be dismissed without prejudice for lack of subject matter jurisdiction. Judge Menendez ordered entry of judgment consistent with that order, and judgment was entered.

Assumably consistent with Judge Menendez's Order granting Mr. Ntamere leave to make specific amendments to his Amended Complaint, Mr. Ntamere subsequently filed an "Unopposed Motion to Amend Complaint" (Dkt. No. 61), the Second Amended Complaint (SAC) (Dkt. No. 61-1), and a redlined version of the proposed SAC (Dkt. No. 61-2). The SAC added Attorney General Keith Ellison, MDHR Commissioner Rebecca Lucero, and MDHR Lead Investigator Tom Bernette ("State Defendants") as defendants to the action and made no other substantive revisions. Mr. Ntamere also wrote a letter to Judge Menendez seeking clarification of her Order on the Motion to Dismiss. (Dkt. No. 62).

Judge Menendez then ordered that the entry of judgment be vacated as premature, granted Mr. Ntamere's Motion to Amend the Complaint, and ordered that the SAC be treated as the operative pleading in this proceeding. (Dkt. No. 63.) Judge Menendez

3

directed the Clerk's Office to add Defendants Minnesota Attorney General Keith Ellison, MDHR Commissioner Rebecca Lucero, and MDHR Lead Investigator Tom Bernette to the case caption and to identify MDHR as "terminated effective November 14, 2023. (*Id.*) By its express terms, that Order did not vacate the Order on the Motion to Dismiss or in any way revive the claims or defendants that had been dismissed pursuant to the Order on the Motion to Dismiss. Most pertinent here, that Order directed this Court to conduct a preservice review of the SAC, consistent with 28 U.S.C. § 1915(e). This Court now turns to this task.[2]

## FACTUAL BACKGROUND

Mr. Ntamere alleges that he "is a second-generation African American male." (SAC ¶ 20.) When AHA hired him as a claim payment adjuster in April 2018 after acquiring his previous employer, Mr. Ntamere's benefits reflected his years of service with the previous company. (*Id.* ¶¶ 22–23.) But Mr. Ntamere's relationship with AHA soon soured. Relevant here, in July 2019, he was required to attend in-person a three-day training workshop entitled "Diversity & Inclusion Awareness: It's All About Respect and Unconscious Bias"

---

[2] The docket shows that Mr. Ntamere has filed notices of appeal of the Order on the Report and Recommendation and of the Order on the Motion to Dismiss. (Dkt. No. 64). Mr. Ntamere has also filed another amended complaint, which appears to be his third. (Dkt. No. 65). Both Mr. Ntamere and Defendants AHA, IBC, and AHA Individuals have written letters to the District Court. (Dkt. Nos. 68, 71.) Defendants AHA, IBC, and AHA Individuals have filed a second Motion to Dismiss and Memorandum in Support. (Dkt. Nos. 74, 76.) This motion to dismiss appears to be substantively identical to its first. (*See* Dkt. No. 14). This motion, however, is not before this Court. Further, although Mr. Ntamere has filed yet another amended complaint, he neither requested nor received leave to do so. *See* Fed. R. Civ. P. 15(a). Accordingly, the SAC remains the operative pleading for the purposes of preservice review.

presented by three visiting IBC human resources representations from Philadelphia, Pennsylvania. (*Id.* ¶ 54.) Mr. Ntamere alleges that on the last day of this workshop, one of the presenters, Jeffrey Kearns, used a racial slur, the "N-word." (*Id.* ¶ 57.) Mr. Ntamere asserts that he captured Mr. Kearns's use of the racial slur on his recording of the training. (*See id.* ¶ 69.)

After the training, Mr. Ntamere filed a complaint with human resources. (*Id.* ¶ 67.) When Mr. Ntamere followed up regarding the status of his complaint, he learned that the complaint was closed but that a probation warning had been placed in his personnel file for recording the workshop in violation of company policy. (*Id.* ¶ 69.) Mr. Ntamere then lodged a complaint with the EEOC ("July 2019 Complaint"). (*Id.* ¶ 70.) Mr. Ntamere alleges that the EEOC representative, Ms. Czarnecki, "cross-filed" his complaint with the Pennsylvania Human Relations Commission ("PHRC") instead of the MDHR in error and that this error was intentional and deprived him of his "right to a local review." (*Id.* ¶ 72.) Mr. Ntamere says that he contacted MDHR directly in January 2020 to resolve this error, but MDHR Lead Investigator Tom Bernette told him that MDHR would not be able to assist him because the complaint had been filed with the PHRC and directed him to contact that agency. (*Id.* ¶¶ 83-84.)

After this incident, Mr. Ntamere's relationship with AHA continued to deteriorate. In June 2020, Mr. Ntamere criticized AHA management on the company's "iWay" forum, in violation of his probation notice and he received a second probation notice. (*Id.* ¶ 95.) Mr. Ntamere responded to the second probation notice by again posting statements critical

5

of AHA on the company's "iWay" forum. (*Id.* ¶ 96.) Mr. Ntamere's employment with AHA was terminated on June 24, 2020. (*Id.* ¶ 97.)

The documents attached to the SAC show that Mr. Ntamere filed a discrimination charge with MDHR exactly one year later, on June 24, 2021 ("June 2021 Complaint"). (SAC at 27.)[3] Upon investigation, MDHR determined there was "no probable cause" to believe that unfair discriminatory practice occurred. (*Id.* at 41–44.) Mr. Ntamere appealed. (*Id.* at 50, 54.) On appeal, MDHR affirmed, explaining that MDHR is subject to a 1-year limitations period and that Mr. Ntamere filed a discrimination charge exactly one year after his termination, meaning that MDHR's investigation was limited to the basis for his termination and did not (and could not) include his allegation that he was discriminated against during the three-day training in July 2019. (*Id.* at 56, ¶ 20.)

The SAC asserts the following seven claims: (1) that Defendants MDHR, AHA, and Czarnecki deprived Mr. Ntamere of due process by cross-filing his 2019 EEOC complaint with the PHRC instead of the MDHR, in violation of 42 U.S.C. § 1983; (2) that Defendants IBC, AHA, Kearns, Clayton, and Waller discriminated against him based on race, in violation of 42 U.S.C. § 1981; (3) that Defendants IBC and AHA retaliated against him by terminating his employment for engaging in a protected activity, in violation of 42 U.S.C. § 1981; (4) that Defendants IBC and AHA engaged in unlawful retaliatory practices, in violation of Minn. Stat. § 363A.15 of the Minnesota Human Rights Act

---

[3] It appears that Plaintiff resubmitted the same documents that he had previously filed in this case. Thus, the CM/ECF pagination is difficult to read because the CM/ECF-generated header has been imposed directly on top of the CM/ECF-generated header on the earlier filings.

6

(MHRA); (5) that Defendants IBC, AHA, Kearns, Clayton, and Waller discriminated against him based on race, in violation of Minn. Stat. § 363A.08, subd. 2, of the MHRA; (6) that Defendants IBC, AHA, Clayton, and Schumacher violated Minn. Stat. § 181.932 of the Minnesota Whistleblower Act; and (7) that Defendants Schumacher, Clayton, and Jane Doe intentionally made false statements against him in violation of state defamation law. These claims are substantively identical to the claims asserted in the First Amended Complaint.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), an action will be dismissed when an IFP applicant has filed a complaint that fails to state a claim on which relief may be granted. *See Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). In reviewing whether a complaint states a claim for which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Varga v. U.S. Nat'l Bank Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. Pro se complaints are to be construed liberally, but they must still allege enough facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

## LEGAL ANALYSIS

Although Mr. Ntamere brings seven claims in the SAC, most of those claims and defendants have already been dismissed from this action. The law of the case doctrine

requires this Court to adhere to those rulings. *See Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 490 (8th Cir. 2004). Upon close review of the Order on the Report and Recommendation (Dkt. No. 58), the Order on the Motion to Dismiss (Dkt. No. 59), and the SAC, this Court finds that only the following claims remain subject to preservice review:

> Claim 1: That MDHR violated Mr. Ntamere's due process rights and engaged in a discriminatory process, in violation of his constitutional rights pursuant to 42 U.S.C. § 1983;
>
> Claim 4: That Defendants IBC and AHA violated Minn. Stat. § 363A.15 of the MHRA;
>
> Claim 5: That Defendants IBC, AHA, and Kearns violated Minn. Stat. § 363A.08, subd. 2, of the MHRA;
>
> Claim 6: That Defendants IBC and AHA violated Minn. Stat. § 181.932 of the Minnesota Whistleblower Act; and
>
> Claim 7: That Defendant Jane Doe intentionally made false statements against him, in violation of Minnesota state defamation laws.[4]

The Court first addresses Mr. Ntamere's § 1983 claim against the MDHR. To state a claim under § 1983, "a plaintiff must allege a violation of a constitutional right committed

---

[4] Judge Menendez dismissed claims 4–7 (state law claims) without prejudice, declining to exercise supplemental jurisdiction over those claims after having dismissed all the claims over which the Court had original jurisdiction. Because Judge Menendez did not reach the merits of these claims, the law of the case doctrine does not preclude this Court from analyzing them in its preservice review under 28 U.S.C. § 1915(e).

by *a person* acting under color of state law." *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (emphasis added). The MDHR, as an agency of the state of Minnesota, is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Accordingly, consistent with the Court's previous recommendation, Mr. Ntamere's § 1983 claim against the MDHR should be dismissed.

The SAC adds Minnesota Attorney General Keith Ellison, MDHR Commissioner Rebecca Lucero, and MDHR Lead Investigator Tom Bernette as defendants in their official capacities only. "State officials acting in their official capacities are § 1983 'persons' when sued for prospective injunctive relief, and the Eleventh Amendment does not bar such relief." *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).

For relief, Mr. Ntamere requests "judgment against Defendants in a reasonable amount in excess of $50,000" (SAC ¶ 108), declaratory judgment, and "a court injunction that would force the charging party's local government agency to take on the responsibility of fixing such cross-filing violation/issues should they arise again in the future" (*see id.* at (a.) & (g.).) The Eleventh Amendment plainly bars the claim for money damages but does not preclude the requests for injunctive and declarative relief. *See Murphy*, 127 F.3d at 750 (dismissing claims for money damages against state defendants acting in their official capacity as barred by the Eleventh Amendment). Mr. Ntamere's claim for money damages should therefore be dismissed.

Turning to Mr. Ntamere's request for injunctive and declaratory relief, while such claims against state officials acting in their official capacity are not barred, "to establish liability in an official-capacity suit under § 1983, a plaintiff must show either that the

official named in the suit took an action pursuant to an unconstitutional governmental policy or custom [ . . . ] or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989).

In this case, Mr. Ntamere's core complaint is that he was denied due process when Defendant Czarnecki erred by cross-filing his initial EEOC claim in July 2019 with the PHRC rather than the MDHR, and then MDHR Lead Investigator Tom Bernette declined to "remedy" this error by considering his complaint. (SAC ¶¶ 81, 83, 84.) Mr. Ntamere asserts that he has a "right" to local review of his discrimination claim. (*Id.* ¶ 103.)

Recognizing that pro se complaints are to be liberally construed, this Court assumes that MDHR Investigator Bernette was acting pursuant to policy in declining to review Mr. Ntamere's July 2019 complaint and that MDHR Commissioner Rebecca Lucero is the final decisionmaker of such policies. Even so, however, Mr. Ntamere has failed to allege a plausible *constitutional* violation.

"The Fourteenth Amendment prohibits state action that deprives 'any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.  Review of a due-process claim such as this one proceeds in two steps. First, the Court must determine whether Mr. Ntamere was deprived of a protected life, liberty, or property interest. *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) ("'The possession of a protected life, liberty, or property interest is a condition precedent' to any due process claim.") (quoting *Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995)). Second, if a protected interest is at issue, the Court must determine whether

the procedures employed were sufficient to safeguard that interest. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 564–70 (1974) (setting procedural requirements for prison disciplinary proceedings).

As a threshold matter, the Court notes that Mr. Ntamere's claims against Defendant Czarnecki and the EEOC have been dismissed, and the only claim remaining is Mr. Ntamere's assertion that the State Defendants deprived him of the "right" to local review of his July 2019 EEOC complaint. But Mr. Ntamere has not asserted a protected interest in having his complaint handled in a particular way by the MDHR (and if he had it would have been futile, for the reasons set out in the following paragraph, as there is no "right to local review"). *See Carlson v. Ameriprise Financial*, No. 08-CV-5303 (MJD/JJK), 2009 WL 10678283, at *16 (D. Minn. May 21, 2009) (citing *Albert v. Dungarvin Minn., Inc.*, Case No. A07-2436, 2009 WL 511015, at *3 (Minn. Ct. App. Mar. 3, 2009)). Mr. Ntamere's due process claim should therefore be dismissed.

Mr. Ntamere's asserted right to local review of an employment discrimination charge plainly does not implicate any life or liberty interest. Thus, the Court considers whether it implicates a property interest. "Property interests . . . are not created by the Constitution." *Board of Regents of the State Colleges v. Roth*, 408 U.S. 564, 576–77 (1972). "A statute, regulation, or official policy pronouncement will give rise to a protected property interest only where (1) it contains particularized substantive standards or criteria that guide the decisionmakers, and (2) it uses mandatory language requiring the decisionmakers to act in a certain way, thus limiting the official's discretion." *Jennings v.*

11

*Lombardi*, 70 F.3d 994, 996 (8th Cir. 1995) (citing *Craft v. Wipf*, 836 F.2d 412, 417 (8th Cir. 1987)).

Pursuant to Minn. Stat. § 363A.28, subdivision 1, of the MHRA, any person alleging a violation of the MHRA can file a charge with the MDHR Commissioner. By its express terms, however, Minn. Stat. § 363A.28 authorizes the Commissioner of the MDHR to "adopt policies to determine which charges are processed and the order in which charges are processed based on their particular social or legal significance, administrative convenience, difficulty of resolution, or other standard consistent with the provisions of this chapter." *See* Minn. Stat. § 363A.28 subd. 6(h). Because state law grants the Commissioner discretion in determining which complaints to process and how to process them, the MHRA does not create a protected property interest. *Jennings*, 70 F.3d at 996 ("Where the statute or policy is only procedural, or where it grants the decisionmaker discretionary authority in implementing it, a protected property interest is not created.").

Further, Mr. Ntamere fails to allege any facts to suggest that the decision by the MDHR to decline to review his July 2019 discrimination complaint deprived him of further review of that claim. Rather, the EEOC "Right to Sue" letter issued after the agency determined it would take no further action on Mr. Ntamere's claim advises him of his right to initiate a federal lawsuit based on the charge within 90 days of receipt of that notice. (SAC at 49.) The letter is dated January 16, 2020, but there is no indication that Mr. Ntamere pursued federal judicial review of his claims. Certainly, there are no allegations that failure to first file the claim with the MDHR deprived him of federal review. Accordingly, because Mr. Ntamere has failed to establish a protected property interest in

having his employment discrimination charge handled by the MDHR, his due process claim should fail.

As the Court understands it, Mr. Ntamere also claims that the process was "discriminatory." (SAC ¶ 102.) Recognizing that pro se complaints are to be afforded liberal construction and that Defendants Czarnecki and the EEOC have already been dismissed from this action, this Court views Mr. Ntamere's claim as alleging that MDHR Lead Investigator Tom Bernette discriminated against him in declining to review his July 2019 charge. (*Id.*)

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "Dissimilar treatment of dissimilarly situated persons does not violate equal protection" *Id.* Thus, in determining whether a plaintiff has established an equal protection claim, the first step is to consider whether the plaintiff "has demonstrated that she was treated differently than others who were similarly situated to her." *Id.* Absent such a showing, the plaintiff does not have a viable equal protection claim. *Id.*

Here, there are no allegations that MDHR declined to consider Mr. Ntamere's complaint but considered the complaints of similarly-situated persons—persons who filed a charge with the EEOC and then had that charge erroneously cross-filed in the wrong state. Thus, Plaintiff has failed to state a plausible equal protection claim, and this claim should likewise be dismissed.

Finally, although "the Eleventh Amendment does not bar damage claims against state officials acting in their personal capacities," *Murphy*, 127 F.3d at 754, the Eighth Circuit requires a "clear statement" that officials are being sued in their personal capacities for individual liability to attach, *id.* Here, there is no such statement. But even if there were, Mr. Ntamere's claims against the State Defendants in their individual capacities would fail because Mr. Ntamere has not identified any plausible violation of a constitutional or federal right.

This leaves Mr. Ntamere's state law claims. This Court does not have jurisdiction over such claims. Section 1331 establishes federal-court jurisdiction over federal-law claims, but that provision does not supply original jurisdiction over state-law claims. Although Section 1332 supplies federal courts with original jurisdiction over claims where the parties are of diverse citizenship, Mr. Ntamere does not allege diversity of citizenship here. Accordingly, this Court does not have original jurisdiction over these claims. Further, the Eighth Circuit has instructed courts to not exercise supplemental jurisdiction over state-law claims where, as here, all federal claims are dismissed prior to trial. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008). Accordingly, the entirety of this action should be dismissed without prejudice—the federal-law claims for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and the state-law claims for lack of jurisdiction, *see* Fed. R. Civ. P. 12(h)(3).[5]

---

[5] As far as the Court can tell, Plaintiff's third amended complaint, self-styled the "Second Amended Complaint" (Dkt. No. 65), is identical to the SAC filed at Dkt. No. 61-1. The third amended complaint does not amend any defendants or factual allegations. (*Cf.* Dkt. No. 61-1 *with* Dkt. No. 65). Thus, even if the Court were to consider Plaintiff's third

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** the Second Amended Complaint of Anthony E. Ntamere (Dkt. No. 61-1) be **DISMISSED WITHOUT PREJUDICE**. The federal-law claims should be dismissed for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and the state-law claims should be dismissed for lack of jurisdiction, *see* Fed. R. Civ. P. 12(h)(3).

Date: January 16, 2024                    *s/ John F. Docherty*
                                          JOHN F. DOCHERTY
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition." A party may respond to those objections within 14 days after being served with a copy. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

amended complaint as the operative complaint (which it does not), the Court's recommendations for dismissal would be the same: because Mr. Ntamere has failed to allege any viable claims over which this Court has jurisdiction, the state-law claims should be dismissed for lack of jurisdiction.